# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |  |
|---|---|---|
| ROBERT ALBERTSON, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : | 1:16-cv-03922-WSD-RGV |
| | : | |
| ART INSTITUTE OF ATLANTA, a | : | |
| Georgia corporation, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## FINAL REPORT AND RECOMMENDATION

Pending before the Court is a motion to compel arbitration filed by defendants Art Institute of Atlanta ("AIA") and EDMC Marketing and Advertising, Inc., a/k/a Education Management Corporation and Education Management, LLC ("EDMC"), jointly referred to as "defendants," [Doc. 7],[1] which plaintiff Robert Albertson ("Albertson") opposes,[2] [Doc. 8].    For the reasons that follow, it is

---

[1] The listed document and page numbers in citations to the record in this Report and Recommendation refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

[2] Defendants filed their motion to compel arbitration, [Doc. 7], on December 22, 2016, and Albertson's response was therefore due to be filed by January 5, 2017, see L.R. 7.1B, NDGa. ("Any party opposing a motion shall serve the party's response, responsive memorandum, affidavits, and any other responsive material not later than fourteen [] days after service of the motion[.]"); see also Fed. R. Civ. P. 6(d) (excluding service by electronic means from the addition of three days to the period that would otherwise expire under Rule 6(a)).  Albertson, however, did not file his response until January 6, 2017, see [Doc. 8], and it is therefore untimely. Nevertheless, the Court will consider the arguments advanced in Alberton's response in ruling on the pending motion to compel arbitration. See Loncke v. Bank

**RECOMMENDED** that defendants' motion to compel arbitration, [Doc. 7], be **GRANTED**, but their request for attorneys' fees be **DENIED**.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 20, 2016, Albertson, a white male over the age of 50, filed the instant complaint against defendants, alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981 ("§ 1981"). [Doc. 1 ¶¶ 13-29].  According to the complaint, Albertson was hired by defendants as a faculty member at EDMC's AIA campus in January 2001, and he became the Academic Director of Media for AIA in 2003.  [Id. ¶¶ 5-6].  He alleges that following the hiring of Newton Myvett ("Myvett") as President of AIA in 2011, he opposed certain discriminatory practices by another AIA professor against AIA students and began being treated with hostility by Myvett, which ultimately led to his termination without cause in January 2016.  [Id. ¶¶ 8-9, 11].

In July 2012, EDMC instituted an Alternative Dispute Resolution Policy ("ADR Policy"), which utilizes a multi-step process for resolving employment-

---

of Am., CIVIL ACTION FILE NO. 1:14-cv-01771-MHC-AJB, 2015 WL 11251741, at *5 (N.D. Ga. Jan. 16, 2015), adopted by 2015 WL 11256662, at *1 (N.D. Ga. Feb. 17, 2015) (citations omitted) ("The Court has discretion to consider the merits of untimely responses.").

related disputes between EDMC and its employees and requires binding arbitration as the final step.  See [Doc. 7-2 (the ADR Policy)].[3]  In particular, the ADR Policy provides in pertinent part:

Purpose of Policy

This policy is intended to create the exclusive means by which all work-related disputes between [EDMC] (and its related entities or asserted agents . . .) and its employees will be promptly addressed and fairly resolved.  No employee will be harassed, intimidated, discharged, disciplined or otherwise retaliated against in any manner for utilizing these Alternative Dispute Resolution procedures.  Accepting or continuing employment with the Company after receipt of this Policy constitutes agreement to abide by its terms.  The term "employee" as used in this Policy includes current employees, former employees and applicants for employment.

Authority

This [ADR] Policy is promulgated pursuant to, and governed by, the Federal Arbitration Act, 9 U.S.C. §§ 1-16.

---

[3] The Court may "consider evidence outside of the pleadings for purposes of a motion to compel arbitration."  Chambers v. Groome Transp. of Ala., 41 F. Supp. 3d 1327, 1334 (M.D. Ala. 2014); see also In re Checking Account Overdraft Litig., 754 F.3d 1290, 1294 (11th Cir. 2014) (describing the standard used to resolve motions to compel arbitration as "summary-judgment-like").  Accordingly, the Court will consider the declarations and exhibits submitted by the parties in ruling on the pending motion to compel arbitration.  See Schriever v. Navient Sols., Inc., No. 2:14-cv-596-FtM-38CM, 2014 WL 7273915, at *2 (M.D. Fla. Dec. 19, 2014) (considering written arbitration agreement proffered by party seeking to compel arbitration).

<u>Policy Coverage</u>

This policy applies to the following individuals unless they are covered by (1) a collective bargaining agreement or (2) an employment agreement containing an arbitration provision:

- All full-time faculty and staff of EDMC and all of its subsidiaries employed on or after the Effective Date of this Policy. . . .

<u>Effective Date</u>

This Policy is effective on and after July 1, 2012.

[<u>Id.</u> at 2 (footnote omitted)]. The ADR Policy also provides that Level One Disputes may be processed through all four steps of the dispute resolution procedures, consisting of informal resolution, submission to the company's senior management, mediation, and binding arbitration, and Level One Disputes include the following:

- <u>Level One Disputes:</u> Claims alleging a violation of legally protected rights such as claims of employment discrimination, harassment, retaliation, wrongful termination or other alleged unlawful treatment, including asserted violations of state, local or federal law. By way of example, such claims include, but are not limited to, alleged violations of the [ADEA]; [Title VII and] the Civil Rights Acts of . . . 1991; the Americans with Disabilities Act and the 2008 amendments to same; the Rehabilitation Act of 1973; the Occupational Safety and Health Act; the Equal Pay Act; the Pregnancy Discrimination Act; the Family and Medical Leave Act; the Fair Labor Standards Act; Uniformed Services Employment and Reemployment Rights Act; the Employee Retirement Income Security Act of 1974; the Workers Adjustment and Restraining Notification Act; [§ 1981], or any alleged violation of public policy, any statutory or common law tort claims or alleged breach of contract claims, or any dispute

arising out of the discipline, demotion or termination of any employee or any other personnel issue of a substantial nature. . . .

[Id. at 2-6].

On October 3, 2012, at approximately 9:00 a.m., EDMC sent an e-mail to Albertson's work e-mail address, stating:

EDMC has implemented an [ADR] Policy to promptly and fairly address all work-related disputes. This new policy is being distributed to all employees and allows for both informal and formal avenues for resolving concerns. This Policy is a term and condition of your continued employment with EDMC. Please click here to access the [ADR] Policy.

Please acknowledge by clicking here that you received, reviewed and agree to comply with the [ADR] Policy. Questions regarding the [ADR] Policy should be directed to your appropriate Human Resources or Employee Relations Representative.

[Doc. 7-3 (Thalman Decl.) at 3 ¶ 4]. This e-mail included two links: one that would direct Albertson to a copy of the ADR Policy and another that would direct Albertson to a login screen, where he would be required to enter his unique username and password,[4] in order to enter the ADR Policy Acceptance page, which stated:

---

[4] All EDMC employees were expected to keep their passwords confidential and if an employee forgot his password, it would have to be reset as no EDMC employee had the ability to recover the unique password. [Doc. 7-3 at 4 ¶ 8]. Employees were also required to change their passwords every 90 days. [Id.].

**Alternative Dispute Resolution Policy Acceptance**

EDMC has implemented an [ADR] Policy to promptly and fairly address all work-related disputes. This policy allows for both informal and formal avenues for resolving concerns. Please click here to access the [ADR] Policy. This Policy is a term and condition of your continued employment with EDMC.

By clicking below, I agree to abide by the terms of the [ADR] Policy. I agree that if I have any dispute with the Company arising out of my employment, I will use the Company's [ADR] Policy as the exclusive means for resolving such dispute. I further acknowledge that I have been given the opportunity to review the terms of the Company's [ADR] Policy, as well as the opportunity to have any questions about the Policy answered.

[Id. at 3-4 ¶¶ 5-7, 9-10; Doc. 7-4 at 2; Doc. 7-5 at 2]. This screen provided a box to click "Accept" at the bottom, and if clicked, the screen would display a "Next" button, which, if clicked, would then display the ADR Policy Acceptance Summary Screen, which stated, "Thank you. Your acceptance has been successfully recorded." [Doc. 7-3 at 4-5 ¶¶ 10-11; Doc. 7-5 at 2; Doc. 7-6 at 2]. At approximately 11:31 a.m. on October 3, 2012, an employee with the Employee Profile Number 27558, later identified as Albertson, accepted the ADR Policy as shown by a "Results" message generated by the system. [Doc. 7-3 at 5 ¶¶ 12-13; Doc. 7-7 at 2; Doc. 7-8 at 2].[5]

---

[5] In his response in opposition, Albertson asserts that he, and other managers, often requested faculty members to sign "with a pen" a "Letter of Agreement," which included dispute resolution provisions, but that he was never asked to sign, nor did he ever sign, a "Letter of Agreement." [Doc. 8-1 (Albertson Decl.) at 3 ¶¶ 9-10 (internal marks omitted)]. He also asserts that due to previous dealings with unethical people, he learned he "should" always have an attorney review any

On October 20, 2016, Albertson filed the instant complaint against defendants, [Doc. 1], and on December 22, 2016, defendants filed the pending motion to compel arbitration, [Doc. 7], in which they request an order compelling arbitration and dismissing this case, or alternatively, staying judicial proceedings pending the arbitration. Defendants also seek to recover reasonable attorneys' fees and expenses incurred in bringing their motion to compel. [Doc. 7-1 at 5, 14-15]. The pending motion, [Doc. 7], having been fully briefed, is now ripe for ruling.

## II. DISCUSSION

Defendants argue that Albertson entered into a valid and binding agreement to arbitrate all disputes arising out of his employment with defendants, including the claims brought in this lawsuit, and that the Court should compel arbitration pursuant to this agreement. See [Docs. 7 & 9]. In response, Albertson argues that

---

contract before signing it and that had an arbitration agreement been submitted to him for his signature, he would not have signed it electronically without an attorney's review, [id. at 2-3 ¶¶ 7-8], and that a "wide variety of people in [his] office had access to [his] computer . . . who, it is conceivable, could have logged in as [him] and performed any task or function they wished to perform, [id. at 3 ¶ 11]. However, in his carefully worded declaration, Albertson never actually denies reviewing, acknowledging, and accepting the ADR Policy through the e-mail he received, see generally [Doc. 8-1]; see also [Doc. 8 at 7], and he also asserts that he was required to watch various training videos regarding hiring new employees and that one of these videos concerned "[d]efendants' preference of settling employee/employer disputes or complaints via arbitration," and that at the end of the videos, he was required to click "Accept" to indicate that he had viewed the video, [Doc. 8-1 at 2 ¶¶ 4-6 (internal marks omitted)].

defendants have failed to "present a valid written agreement to arbitrate," that "he never signed or agreed to the arbitration agreement," that "no signed agreement is before the Court," and that his "simple review of an e-mail should not create a binding arbitration contract."  [Doc. 8 at 4, 7].  He also argues that any arbitration agreement was unconscionable since "the parties did not have equal bargaining power, as [he] was required to give up the federal right to bring an employment discrimination jury trial while [d]efendants could never have brought a similar lawsuit against [him]," [id. at 7], and that there was no consideration between the parties, [id. at 9].  Albertson advances several other arguments opposing the motion, including that arbitration cannot be compelled because the Federal Arbitration Act ("FAA") is unconstitutional, the FAA does not apply to him, he has a fundamental right to a jury trial, and the arbitration agreement does not evince a transaction involving interstate commerce.  [Id. at 10-16].  The Court will address each of these arguments.

A.    **Legal Standard**

There is a strong presumption in favor of arbitration under federal law and the FAA, which provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in

writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The arbitration agreement in this case is governed by the FAA. See Kong v. Allied Prof'l Ins. Co., 750 F.3d 1295, 1303 (11th Cir. 2014) (citing 9 U.S.C. §§ 1-2)) ("The FAA applies to all contracts involving interstate commerce."); Wilson v. O'Charley's, LLC, Civil Action File No. 1:14-CV-1983-TWT, 2014 WL 5716295, at *1 (N.D. Ga. Nov. 4, 2014), adopted at *1 (citations omitted) (quoting Circuit City v. Adams, 532 U.S. 105, 119 (2001)) (noting that the FAA "applies generally to all employment contracts except those involving 'transportation workers'").[6]

---

[6] Several of Alberton's arguments may be disposed of summarily. First, Albertson argues, without any supporting authority, that the FAA is unconstitutional, see [Doc. 8 at 10-11]; however, "[h]ad [he] bothered to research this argument, he would have seen that the Supreme Court upheld the constitutionality of the FAA in 1967," Drawdy v. Don Jackson Chrysler Dodge Jeep, Inc., CIVIL ACTION FILE NO. 1:14-CV-03490-WSD-WEJ, 2015 WL 12591774, at *3 (N.D. Ga. Feb. 5, 2015) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 405 (1967)). Similarly, Albertson argues, again without any supporting authority, that the plain meaning of the FAA excludes him from its application, see [Doc. 8 at 12]; however, he was employed by defendants as a faculty member and Academic Director, see [Doc. 1 ¶¶ 5-6], and the "Supreme Court has clarified that the FAA generally applies to contracts of employment except those involving 'transportation workers,'" which Albertson was not, Drawdy, 2015 WL 12591774, at *3 (citing Circuit City, 532 U.S. at 119). Third, Alberton contends that the arbitration agreement "is unenforceable because it deprives him of a jury trial," id. at *5; see also [Doc. 8 at 12-14], but "[w]here a party enters into a valid agreement to arbitrate, the party is not entitled to a jury trial or to a judicial forum for covered disputes," Drawdy, 2015 WL 12591774, at *5 (citation and internal marks omitted), and as discussed further herein, the Court finds that the parties entered into a valid

The FAA evinces "a strong federal policy in favor of arbitration." <u>Picard v. Credit Sols., Inc.</u>, 564 F.3d 1249, 1253 (11th Cir. 2009) (per curiam) (citation omitted). "Accordingly, courts 'rigorously enforce' arbitration agreements," <u>id.</u> (citations omitted), and "'[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,'" <u>Chambers</u>, 41 F. Supp. 3d at 1334 (quoting <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983)). Federal statutory claims of employment discrimination are also subject to arbitration under the FAA. <u>See</u> <u>Wallace v. Rick Case Auto, Inc.</u>, 979 F. Supp. 2d 1343, 1347 (N.D. Ga. 2013), adopted at 1345 (citation omitted) ("'[I]t is not an unlawful employment practice for an employer to require an employee to arbitrate, rather than litigate, rights under various federal statutes, including employment-discrimination statutes.'"); <u>Alexander v. Nissan</u>, No. 4:10-cv-270, 2011 WL 1557852, at *1 (S.D. Ga. Apr. 25, 2011) (quoting <u>Bender v. A.G. Edwards & Sons, Inc.</u>, 971 F.2d 698, 699 (11th Cir. 1992) (per curiam)) ("'Title VII claims are subject to compulsory arbitration.'").

---

agreement to arbitrate. Finally, Albertson argues that the arbitration agreement does not evidence commerce, <u>see</u> [Doc. 8 at 14-16], but he again "cites no authority to support [this argument]," and "it is settled that the phrase 'involving commerce' as used in [the] FAA is not to be narrowly construed," <u>Drawdy</u>, 2015 WL 12591774, at *5 (citation omitted), and given the "multistate nature" of EDMC, <u>Allied-Bruce Terminix Cos. v. Dobson</u>, 513 U.S. 265, 282 (1995), it is clear that the contract at issue involves interstate commerce as required for the application of the FAA, <u>see</u> <u>Masoner v. Educ. Mgmt. Corp.</u>, 18 F. Supp. 3d 652, 658 (W.D. Pa. 2014).

In resolving a motion to compel arbitration, the Court must determine whether: "(1) there is a valid written agreement to arbitrate; (2) the issue [sought to be arbitrated] is arbitrable under the agreement; and (3) the party asserting the claims has failed or refused to arbitrate the claims."[7] Wallace, 979 F. Supp. 2d at 1347 (alteration in original) (internal marks omitted) (citing Lomax v. Woodmen of the World Life Ins. Soc'y, 228 F. Supp. 2d 1360, 1362 (N.D. Ga. 2002)).  To determine whether there is a binding agreement to arbitrate, the Court "appl[ies] the contract law of the particular state that governs the formation of contracts."  Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1368 (11th Cir. 2005).  The law of Georgia applies here.  "The basic requirements for a binding contract under Georgia law are (1) a definite offer and (2) complete acceptance (3) for consideration." Caley v. Gulfstream Aerospace Corp., 333 F. Supp. 2d 1367, 1374 (N.D. Ga. 2004), aff'd, 428 F.3d 1359 (11th Cir. 2005) (citing Moreno v. Strickland, 567 S.E.2d 90, 92 (Ga. Ct. App. 2002)).

---

[7] Albertson has not argued that his claims would not be covered by the ADR Policy, nor could he make such an argument as the policy clearly includes the claims he has asserted in this case. See [Doc. 7-2 at 2-3].  Moreover, it is clear that Albertson has refused to arbitrate his claims by filing this action.  See FR 8 Singapore Pte. Ltd. v. Albacore Mar. Inc., 754 F. Supp. 2d 628, 632 (S.D.N.Y. 2010) (first alteration in original) (quoting LAIF X SPRL v. Axtel, S.A. de C.V., 390 F.3d 194, 198 (2d Cir. 2004)) ("In a paradigmatic case, '[a] party has refused to arbitrate if it commences litigation[.]'").  Thus, the sole issue is whether the parties entered into a valid agreement to arbitrate Alberton's claims.

**B.**   **Merits of Defendants' Motion to Compel Arbitration, [Doc. 7]**

   **1.**   *Valid Agreement to Arbitrate*

   The preliminary issue to be addressed is whether the parties entered into a valid agreement to arbitrate.   This inquiry is based on Georgia contract law governing offer, acceptance, and consideration.   See Johnson v. Macy's S., LLC., No. 1:07-cv-1256-WSD, 2007 WL 2904126, at *3 (N.D. Ga. Sept. 27, 2007) (citation omitted).   Albertson has not contested the offer element, but he contends that "there is no acceptance or consideration[.]"[8]   [Doc. 8 at 9].   The Court will address these contested elements.

   **a.**   **Acceptance of Offer**

   Defendants have presented evidence establishing that they sent a mass e-mail to EDMC employees, advising them of the new ADR Policy and providing them a direct link to the policy for their review.   [Doc. 7-3 at 3 ¶¶ 4-5].   This e-mail also provided a second link to a login screen, where, after logging in, the recipient would

---

   [8] While Albertson has not specifically challenged whether defendants offered an arbitration agreement to him, the Court finds that defendants' evidence establishes they "took reasonable steps to communicate the [ADR Policy], that is, the offer, to [Albertson]," when defendants sent an e-mail regarding the ADR Policy to all existing employees, including Albertson at an e-mail address used by him, with a link to access the policy and to  accept it, and that they therefore clearly "offered" the ADR Policy to Albertson.   See  Dixon v. Synchrony Fin., CIVIL ACTION FILE NO. 1:15-CV-00406-RWS-JFK, 2015 WL 12720290, at *5-6 (N.D. Ga. Aug. 18, 2015), adopted by 2015 WL 12723144, at *1 (N.D. Ga. Sept. 10, 2015) (footnote and citations omitted); see also [Doc. 7-3 at 3-4 ¶¶ 2-6].

view the ADR Policy Acceptance screen.  [Id. at 3-4 ¶¶ 6-7, 9-10; Docs. 7-4 & 7-5].

This acceptance screen provided a box at the bottom for the recipient to click

"Accept," and upon clicking it, the screen would display a "Next" button, which, if

clicked, would then display a screen that confirmed the acceptance by stating,

"Thank You.  Your acceptance has been successfully recorded."  [Doc. 7-3 at 4-5 ¶¶

10-11; Docs. 7-5 & 7-6].  Defendants have specifically proffered evidence showing

that on October 3, 2012, such an e-mail was sent to Albertson's work e-mail address.

[Doc. 7-3 at 3 ¶ 4].  To confirm that Albertson accepted the agreement, defendants

submitted the "Results" message, which shows that Alberton, with his assigned

Employee Profile Number, acknowledged receipt of the ADR Policy and accepted

it at 11:31 a.m. on October 3, 2012, agreeing to be bound by the terms of the policy.

[Id. at 6 ¶¶ 12-15; Doc. 7-7].

Albertson maintains that he never signed or agreed to an arbitration

agreement.  [Doc. 8 at 4].  However, in his declaration, he never specifically denies

that he received and reviewed the e-mail containing the ADR Policy, see generally

[Doc. 8-1], and in fact, he asserts that his "simple review of an e-mail should not

create a binding arbitration contract" and that "no signed agreement is before the

Court," [Doc. 8 at 4, 7].[9]  However, "[t]he Eleventh Circuit Court of Appeals has

---

[9] Indeed, in his declaration, Alberton makes vague statements about having clicked "Accept" with regard to training videos, including a training video

stated that a party seeking to avoid arbitration must unequivocally deny that an agreement to arbitrate was reached and must offer some evidence to substantiate the denial. . . . More specifically, [the court] require[s] a party resisting arbitration to substantiate[ ] the denial of the contract with enough evidence to make the denial colorable." Dixon, 2015 WL 12720290, at *4 (all but first alteration in original) (citations and internal marks omitted). Although Albertson denies signing any arbitration agreement,[10] the Court "finds that [he] has not unequivocally denied the existence of any arbitration agreement with [d]efendants and, in light of the evidence presented by [d]efendants, that []he has failed to produce 'some evidence'

_____

concerning arbitration, to indicate that he had reviewed these videos at some unspecified time; that he would never have signed a contract without first having his attorney review it; and that he often requested other faculty members to "sign (with a pen) a 'Letter of Agreement,'" which included language similar to the language concerning arbitration," but that he was never asked to, nor did he ever, sign such a "Letter of Agreement." See [Doc. 8-1 at 2-3 ¶¶ 4-10]. Albertson then generally avers that a "wide variety of people" had access to his computer and that it was "conceivable" that these unknown people, including IT technicians, "could have logged in as [him] and performed any task or function they wished to perform." [Id. at 3 ¶ 11].

[10] "When a defendant has produced evidence showing that it sent an item properly mailed, or in this case emailed, there arises a rebuttable presumption that it was received by the addressee," and "[t]his presumption cannot be overcome merely by stating in an affidavit that the plaintiff never received the agreement." Dixon, 2015 WL 12720290, at *5 (citations and internal marks omitted). As previously stated, Albertson does not deny receiving and reviewing the e-mail containing the ADR Policy and advising him that this policy was a "term and condition of [his] continued employment with EDMC," just that he never "signed" or "assent[ed]" to any such agreement. [Doc. 7-3 at 3 ¶ 4; Doc. 8 at 4, 7].

to establish a 'colorable' denial of the existence of the agreement in this case." Id. at *5.

Albertson's "argument that he is not bound by the Arbitration Agreement because he never signed any agreement . . . is also unavailing." Athon v. Direct Merchs. Bank, No. 5:06-CV-1 (CAR), 2007 WL 1100477, at *4 (M.D. Ga. Apr. 11, 2007) (emphasis omitted). "[T]he FAA only requires that the agreement to arbitrate be written, not that it be signed." Id. (emphasis and citation omitted). As such, "[b]ecause arbitration agreements need only be in writing and need not be signed, the evidence before the court need not demonstrate that [Albertson] signed the acknowledgment of the [ADR Policy], which is undeniably in writing." Dixon, 2015 WL 12720290, at *7 (citation omitted); see also Athon, 2007 WL 1100477, at *4 (citations and internal marks omitted) ("[I]t is well-established that a written agreement to arbitrate need not be signed by the parties as a prerequisite to the enforcement of the agreement."). And, "under Georgia contract law, [a]n offer may be accepted . . . either by a promise to do the thing contemplated therein, or by the actual doing of the thing." Dixon, 2015 WL 12720290, at *7 (alterations in original) (citations and internal marks omitted). That is, "the parties to an arbitration agreement may demonstrate their assent to be bound by the agreement by acting upon or accepting benefits under the contract containing the arbitration agreement

even though they do not sign it." <u>Athon</u>, 2007 WL 1100477, at *4 (citations omitted).

The e-mail sent to EDMC employees, including Albertson, set forth the terms governing acceptance of the contract, namely that the ADR Policy was a "term and condition of your continued employment with EDMC," and the ADR Policy itself states, "Accepting or continuing employment . . . after receipt of this Policy constitutes agreement to abide by its terms." [Doc. 7-2 at 2; Doc. 7-3 at 3 ¶ 4]; <u>see also</u> [Doc. 7-5 (the ADR Policy Acceptance screen advising the employee that the policy was a "term and condition of [] continued employment with EDMC")]. In fact, Albertson does not dispute that he was informed of the terms of the agreement, <u>see generally</u> [Docs. 8 & 8-1], and "being aware of the [ADR Policy] and that continued employment constituted acceptance, [Albertson] elected to continue [his] employment," and therefore, "even if [he] did not sign the arbitration agreement, his continued employment after acknowledging receipt of the policy, constituted acceptance of the arbitration agreement," <u>Dixon</u>, 2015 WL 12720290, at *7 (citation omitted); <u>see also</u> <u>Caley</u>, 428 F.3d at 1374-76 (finding plaintiffs accepted the arbitration agreement by their continued employment where an arbitration agreement was announced as a new condition of employment that gave employees the option of either continuing employment, thereby accepting the agreement, or terminating employment); <u>Pope v. Dillard's Inc.</u>, CIVIL ACTION NO.

1:14–CV–1793–AT, 2014 WL 12323688, at *3 (N.D. Ga. Nov. 26, 2014) (finding plaintiff "demonstrated her acceptance of the terms of the Rule of Arbitration through her continued employment and electronic acceptance of the binding Agreement to Arbitrate"); Wilson, 2014 WL 5716295, at *2.

### b.   Consideration

"To satisfy the consideration requirement under Georgia law, an accepting party to a contract can either tender bargained-for performance or make a mutual promise." Shubert v. Scope Prods., Inc., Civil Action No. 2:10–CV–00101–RWS, 2011 WL 3204677, at *2 (N.D. Ga. July 27, 2011) (citations and internal marks omitted). Despite defendants' assertion that "[p]ursuant to both federal and state law, [Alberton's] continued employment clearly established the . . . consideration necessary to form a binding contract," [Doc. 7-1 at 9 (citations omitted), Albertson argues that because he was an at-will employee of defendants, "no consideration exists" and that the arbitration agreement is therefore "not an enforceable contact under Georgia law," [Doc. 8 at 9].  The Court disagrees with Albertson, and finds that "[d]efendants' continued employment of [Albertson] (who was an at-will employee) constitutes bargained for performance in exchange for [Albertson's] assent." Shubert, 2011 WL 3204677, at *2 (citing Hiers v. Choicepoint Servs. Inc., 606 S.E.2d 29, 31 (Ga. Ct. App. 2004)).

17

In addition, under Georgia law, "mutual promises and obligations are sufficient consideration to support a contract." <u>Caley</u>, 428 F.3d at 1376 (citing <u>Atlanta Six Flags P'ship v. Hughes</u>, 381 S.E.2d 605, 607 (Ga. Ct. App. 1989)).  Here, the agreement was supported by valid consideration because it was based on a mutual promise to submit claims between the parties to final, binding arbitration, and provided that defendants would bear the costs associated with arbitration.  <u>See</u> [Doc. 7-2 at 2, 5].  Accordingly, the Court finds that there was "consideration in that [d]efendant[s] conditioned [Albertson's] employment on [his acceptance] of the arbitration agreement and made a reciprocal promise to arbitrate and be bound by the outcome for the types of claims described in the agreement." <u>Wilson</u>, 2014 WL 5716295, at *2 (citations omitted).

### 2.   *Unconscionable Agreement*

"In Georgia, a contract can be challenged for procedural unconscionability, which addresses the 'process of making the contract,' or 'substantive unconscionability,' which 'looks to the contractual terms themselves.'" <u>Jones v. TitleMax of Ga., Inc.</u>, No. Civ.A. 105CV1154TWT, 2006 WL 562189, at *7 (N.D. Ga. Mar. 7, 2006), adopted at *1 (footnote and citation omitted) (quoting <u>Caley</u>, 428 F.3d at 1377).  "In analyzing this issue, the Court still must apply general state contract

law rather than s[t]ate laws governing arbitration clauses specifically." Id. at *7 n.7 (citations omitted).

Albertson argues that the agreement to arbitrate, which he refers to as a "contract[] of adhesion,"[11] is unconscionable and is therefore not enforceable due to the "unequal bargaining power" between the parties since he "was required to give up the federal right to bring an employment discrimination jury trial[.]" [Doc. 8 at 7-9]. He "submits that the proposed arbitration agreement is both procedurally and substantively unconscionable and is itself evidence of [d]efendants' scheme to deprive [him] of a day in court." [Id. at 8]. "Yet [Albertson] do[es] not bring to this Court's attention a single case from Georgia or within the Eleventh Circuit where a court found an agreement to arbitrate unconscionable for the reason[] advanced here," and his "argument is not sufficient to render an agreement to arbitrate unconscionable in the employment context." Wallace, 979 F. Supp. 2d at 1351-52 (citation omitted).

As to Alberton's argument that he was required to give up his federal rights while defendants were not, the ADR policy clearly states: "This policy is intended

_____

[11] To the extent Albertson is arguing that the ADR Policy is an unenforceable contract of adhesion, see [Doc. 8 at 7], his argument fails "because there is nothing inherently unfair or oppressive about arbitration clauses," and he has failed to demonstrate that he either "lacked a meaningful choice or that the [ADR Policy] is inherently unfair or oppressive," Drawdy, 2015 WL 12591774, at *2 (citations and internal marks omitted).

to create the exclusive means by which all work-related disputes between [EDMC] (and its related entities . . .) and its employees will be promptly addressed and fairly resolved." [Doc. 7-2 at 2 (footnote omitted)]. The terms of the ADR Policy do not favor one party "as evident by their neutrality." Marotta v. Toll Bros., Inc., Civil Action No. 09-2328, 2010 WL 744174, at *5 (E.D. Pa. Mar. 3, 2010). Furthermore, even were one party favored, "[i]nequality in bargaining power is itself insufficient for finding an arbitration agreement unenforceable in the employment context." Id. (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991)); see also Caley, 428 F.3d at 1377; Drawdy, 2015 WL 12591774, at *2. Indeed, "[r]elationships between employers and employees may involve unequal bargaining power, but the Supreme Court has nonetheless upheld agreements to arbitrate in this context." Haluska v. RAF Fin. Corp., 875 F. Supp. 825, 828 (N.D. Ga. 1994) (citation omitted). Therefore, Albertson's arguments that the arbitration agreement is unconscionable are without merit.

**C.    Attorneys' Fees under 28 U.S.C. § 1927**

Defendants seek an award of reasonable attorneys' fees and expenses incurred in bringing their motion to compel arbitration, pursuant to 28 U.S.C. § 1927. [Doc. 7-1 at 14-15]. Section 1927 "provides that '[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court

to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'" Peterson v. BMI Refractories, 124 F.3d 1386, 1395 (11th Cir. 1997) (alterations in original) (quoting 28 U.S.C. § 1927)).  However, "[t]his section is not a 'catch-all' provision for sanctioning objectionable conduct by counsel," Miccosukee Tribe of Indians of Fla. v. Cypress, No. 12-22439-Civ, 2015 WL 235433, at *9 (S.D. Fla. Jan. 16, 2015), aff'd in part, No. 15-11223, 2017 WL 908187 (11th Cir. Mar. 8, 2017) (per curiam) (unpublished) (internal marks omitted) (quoting Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1225 (11th Cir. 2003)), and "'[s]anctions are not warranted . . . simply because counsel's performance did not rise to the highest standards of the profession,'" id. at *9 (citation omitted) (quoting Smith v. Grand Bank & Trust of Fla., 193 F. App'x 833, 836 (11th Cir. 2006) (per curiam) (unpublished)); see also Peterson, 124 F.3d at 1395 (citations omitted) (noting that "the provisions of § 1927, being penal in nature, must be strictly construed"). Indeed, unreasonable and vexatious conduct warranting sanctions under § 1927 "occurs 'only when the attorney's conduct is so egregious that it is tantamount to bad faith[.]'" Wandner v. Am. Airlines, No. 14-22011-CIV, 2015 WL 145019, at *12 (S.D. Fla. Jan. 12, 2015) (quoting Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1239-42 (11th Cir. 2007)); see also Cypress, 2015 WL 235433, at *9 (alteration in original) (citation and internal marks omitted) ("[S]omething more than a lack of

merit is required; '[b]ad faith' is the touchstone."); <u>Daniels v. Sodexo, Inc.</u>, No.

8:10-cv-00375-T-27AEP, 2013 WL 4008744, at *7 (M.D. Fla. Aug. 5, 2013) (citations

omitted) ("[M]ere negligent conduct alone does not support a finding of bad faith

under Section 1927.").

Defendants allege that they provided Albertson's counsel with a copy of the

ADR Policy and requested that this action be dismissed, but that Albertson's counsel

has refused to submit the claims to arbitration. <u>See</u> [Doc. 7-1 at 14]. The Court finds

that there is insufficient evidence that the refusal by Albertson's counsel to

withdraw the complaint and initiate arbitration, even if based on flawed legal

arguments, constituted such egregious misconduct as to amount to bad faith

warranting sanctions under the exacting standard of § 1927. Similarly, the Court's

finding that Albertson's claims are subject to arbitration in this case is based on the

merits of defendants' motion to compel and does not establish any unreasonable or

vexatious conduct on the part of Alberton's counsel. Accordingly, it is

**RECOMMENDED** that defendants' request for attorney's fees and expenses

pursuant to 28 U.S.C. § 1927 be **DENIED**. <u>See</u> <u>Stephan v. Brookdale Sr. Living</u>

<u>Cmtys., Inc.</u>, Civil No. 12-cv-00989-LTB, 2013 WL 673292, at *2 (D. Colo. Feb. 25,

2013) (defendant was not entitled to attorney's fees upon successfully moving to

compel arbitration since the mere fact that plaintiff's objections to arbitration proved

unavailing did not suffice to demonstrate sanctionable misconduct under § 1927); Serv. Emps. Int'l Union, Local 105 v. Mental Health Ctr. of Denver, Civil Action No. 10–cv–01416–CMA–MEH, 2010 WL 2985619, at *3 (D. Colo. July 23, 2010) (citation omitted) (granting motion to compel arbitration while denying movant's request for costs and attorney's fees incurred in bringing the motion, and noting that "fee awards under [§ 1927] are granted 'only in instances evidencing a serious and standard disregard for the orderly process of justice'"); Josie-Delerme v. Am. Gen. Fin. Corp., No. 08-CV-3166 (NG), 2009 WL 2366591, at *5 (E.D.N.Y. July 31, 2009) (granting defendants' motion to compel arbitration but denying their request for fees under § 1927, despite defendants' representation that plaintiff refused to withdraw her complaint after defense counsel sought to enforce the parties' arbitration agreement through conversations with plaintiff's counsel).

## III. CONCLUSION

For the reasons stated, it is **RECOMMENDED** that defendants' motion to compel arbitration, [Doc. 7], be **GRANTED**, that their request for attorneys' fees be **DENIED**, and that this action be **DISMISSED**.[12]

---

[12] See Kozma v. Hunter Scott Fin., L.L.C., No. 09–80502–CIV, 2010 WL 724498, at *2 (S.D. Fla. Feb. 25, 2010) (collecting cases) (noting that the Eleventh Circuit has "frequently affirmed where the district court compelled arbitration and dismissed the underlying case"); Athon, 2007 WL 1100477, at *6 (citation omitted) (citing Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992)) ("In cases such as the one at bar, where all of the plaintiff's claims are subject to arbitration, the

The Clerk is **DIRECTED** to terminate this reference.

**IT IS SO RECOMMENDED**, this 23rd day of March, 2017.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

---

Court may dismiss with prejudice, rather than stay, the action."); Jackson v. Cintas Corp., Civil Action No. 1:03–CV–3104–JOF, 2004 WL 5545444, at *10 (N.D. Ga. Sept. 29, 2004), aff'd, 425 F.3d 1313 (11th Cir. 2005) (per curiam) (citations omitted) ("When all claims in a given action must be submitted to arbitration, the court may dismiss rather than simply stay the case.").