# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ROBERT ALBERTSON,<br><br>        Plaintiff,<br><br>v.<br><br>ART INSTITUTE OF ATLANTA, a Georgia Corporation, and EDMC MARKETING AND ADVERTISING, INC., a Georgia Corporation, a/k/a Education Management Corporation, a/k/a Education Management, LLC,<br><br>        Defendants. | 1:16-cv-3922-WSD |

## **OPINION AND ORDER**

This matter is before the Court on Magistrate Judge Russel G. Vineyard's Final Report and Recommendation [10] ("R&R"). The R&R recommends the Court grant Defendants Art Institute of Atlanta ("AIA") and EDMC Marketing and Advertising, Inc.'s ("EDMC") (together, "Defendants") Motion to Compel Arbitration [7].

**I.     BACKGROUND**

   A.    Facts[1]

On October 20, 2016, Plaintiff Robert Albertson ("Albertson"), a white male over the age of 50, filed his Complaint against defendants, alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981 ("§ 1981"). ([1] ¶¶ 13-29). According to the Complaint, in January 2001, Albertson was hired by Defendants as a faculty member at EDMC's AIA campus, and, in 2003, he became the Academic Director of Media for AIA. (Id. ¶¶ 5-6). He alleges that, following the hiring of Newton Myvett ("Myvett") as President of AIA in 2011, he opposed certain discriminatory practices by another AIA professor against AIA students and began being treated with hostility by Myvett, which ultimately led to his termination without cause in January 2016. (Id. ¶¶ 8-9, 11).

---

[1]    The facts are taken from the R&R and the record. The parties have not objected to any specific facts in the R&R, and the Court finds no plain error in them. The Court thus adopts the facts set out in the R&R. See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993).

In July 2012, EDMC instituted an Alternative Dispute Resolution Policy ("ADR Policy"), which utilizes a multi-step process for resolving employment-related disputes between EDMC and its employees and requires binding arbitration as the final step. (See [7.2] (the "ADR Policy")). The ADR Policy provides in pertinent part:

Purpose of Policy

This policy is intended to create the exclusive means by which all work-related disputes between [EDMC] (and its related entities or asserted agents . . .) and its employees will be promptly addressed and fairly resolved. No employee will be harassed, intimidated, discharged, disciplined or otherwise retaliated against in any manner for utilizing these Alternative Dispute Resolution procedures. Accepting or continuing employment with the Company after receipt of this Policy constitutes agreement to abide by its terms. The term "employee" as used in this Policy includes current employees, former employees and applicants for employment.

Authority

This [ADR] Policy is promulgated pursuant to, and governed by, the Federal Arbitration Act, 9 U.S.C. §§ 1-16.

Policy Coverage

This policy applies to the following individuals unless they are covered by (1) a collective bargaining agreement or (2) an employment agreement containing an arbitration provision:

> • All full-time faculty and staff of EDMC and all of its subsidiaries employed on or after the Effective Date of this Policy. . . .

3

Effective Date

This Policy is effective on and after July 1, 2012.

(Id. at 2 (footnote omitted)). The ADR Policy also provides that Level One Disputes may be processed through all four steps of the dispute resolution procedures, consisting of informal resolution, submission to the company's senior management, mediation, and binding arbitration. Level One Disputes include the following:

> Level One Disputes: Claims alleging a violation of legally protected rights such as claims of employment discrimination, harassment, retaliation, wrongful termination or other alleged unlawful treatment, including asserted violations of state, local or federal law. By way of example, such claims include, but are not limited to, alleged violations of the [ADEA]; [Title VII and] the Civil Rights Acts of . . . 1991; the Americans with Disabilities Act and the 2008 amendments to same; the Rehabilitation Act of 1973; the Occupational Safety and Health Act; the Equal Pay Act; the Pregnancy Discrimination Act; the Family and Medical Leave Act; the Fair Labor Standards Act; Uniformed Services Employment and Reemployment Rights Act; the Employee Retirement Income Security Act of 1974; the Workers Adjustment and Retraining Notification Act; [§ 1981], or any alleged violation of public policy, any statutory or common law tort claims or alleged breach of contract claims, or any dispute arising out of the discipline, demotion or termination of any employee or any other personnel issue of a substantial nature. . . .

(Id. at 2-6).

On October 3, 2012, at approximately 9:00 a.m., EDMC sent an e-mail to Albertson's work e-mail address, stating:

4

> EDMC has implemented an [ADR] Policy to promptly and fairly address all work-related disputes. This new policy is being distributed to all employees and allows for both informal and formal avenues for resolving concerns. This Policy is a term and condition of your continued employment with EDMC. Please <u>click here</u> to access the [ADR] Policy.
>
> Please acknowledge <u>by clicking here</u> that you received, reviewed and agree to comply with the [ADR] Policy. Questions regarding the [ADR] Policy should be directed to your appropriate Human Resources or Employee Relations Representative.

([7.3] ("Thalman Decl.") at 3 ¶ 4). This e-mail included two links: one that would direct Albertson to a copy of the ADR Policy and another that would direct Albertson to a login screen, where he would be required to enter his unique username and password,4 in order to enter the ADR Policy Acceptance page, which stated:

> **Alternative Dispute Resolution Policy**
>
> Acceptance EDMC has implemented an [ADR] Policy to promptly and fairly address all work-related disputes. This policy allows for both informal and formal avenues for resolving concerns. Please click here to access the [ADR] Policy. This Policy is a term and condition of your continued employment with EDMC.
>
> By clicking below, I agree to abide by the terms of the [ADR] Policy. I agree that if I have any dispute with the Company arising out of my employment, I will use the Company's [ADR] Policy as the exclusive means for resolving such dispute. I further acknowledge that I have been given the opportunity to review the terms of the Company's [ADR] Policy, as well as the opportunity to have any questions about the Policy answered.

5

(Id. at 3-4 ¶¶ 5-7, 9-10; [7.4] at 2; [7.5] at 2). This screen provided a box to click "Accept" at the bottom, and if clicked, the screen would display a "Next" button, which, if clicked, would then display the ADR Policy Acceptance Summary Screen, which stated, "Thank you. Your acceptance has been successfully recorded." ([7.3] at 4-5 ¶¶ 10-11; [7.5] at 2; [7.6] at 2). At approximately 11:31 a.m. on October 3, 2012, an employee with the Employee Profile Number 27558, later identified as Albertson, accepted the ADR Policy as shown by a "Results" message generated by the system. ([7.3] at 5 ¶¶ 12-13; [7.7] at 2; [7.8] at 2).

B.  Procedural History

On October 20, 2016, Albertson filed his Complaint. On December 22, 2016, Defendants filed their Motion to Compel Arbitration. Defendants request an order compelling arbitration and dismissing this case, or, alternatively, staying judicial proceedings pending the arbitration. Defendants also seek to recover reasonable attorneys' fees and expenses incurred in bringing their motion to compel. ([7.1] at 5, 14-15).

On March 23, 2017, the Magistrate Judge issued his R&R. The Magistrate Judge found that there was a valid agreement to arbitrate, because there was acceptance of an offer and consideration. He also found that the agreement is not

6

unconscionable. The Magistrate Judge thus recommends that the Court grant Defendants' Motion to Compel Arbitration. The Magistrate Judge also recommends that the Court deny Defendants' request for attorneys fees, because Defendants did not show that Albertson engaged in bad faith warranting sanctions. No party filed objections to the R&R.

## II. DISCUSSION

### A. Legal Standards

#### 1. Standard of Review of a Magistrate Judge's R&R

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam). A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Where, as here, no party has objected to the report and recommendation, the Court conducts only a plain error review of the record. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).

2. <u>Standard of Review on a Motion to Compel Arbitration</u>

"The determination of the propriety of a motion to compel arbitration pursuant to Section 4 of the Federal Arbitration Act (FAA) is a two-step inquiry." <u>Klay v. All Defendants</u>, 389 F.3d 1191, 1200 (11th Cir. 2004) (footnote omitted).[2] "The first step is to determine whether the parties agreed to arbitrate the dispute." <u>Id.</u> (citing <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 626 (1985)). The Court must make this determination "by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA].'" <u>Id.</u> (quoting <u>Mitsubishi Motors Corp.</u>, 473 U.S. at 626). This inquiry must be undertaken against the background of a "liberal federal policy favoring arbitration agreements." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983) ("[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."). Under this policy, it is the role of courts to "rigorously enforce agreements to arbitrate." <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 221 (1985).

---

[2] Section Four of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

8

"Because arbitration is a matter of contract, however, the FAA's strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate." Klay, 389 F.3d at 1200 (citing Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1995)). Where the existence of an arbitration agreement is in question, the party seeking to avoid arbitration must unequivocally deny that an agreement to arbitrate was reached and must offer some evidence to substantiate the denial. See Magnolia Capital Advisors, Inc. v. Bear Stearns & Co., 272 F. App'x 782, 785 (11th Cir. 2008) (citing Wheat, First Sec., Inc. v. Green, 993 F.2d 814, 819 (11th Cir. 1993)). More specifically, a party resisting arbitration must substantiate the denial of the contract with enough evidence to make the denial colorable. Id. When determining whether the parties agreed to arbitrate their dispute, a court applies state law governing the formation of contracts, giving due regard to the federal policy favoring arbitration. Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1368 (11th Cir. 2005). In the absence of an agreement to arbitrate, a court cannot compel the parties to settle their dispute in an arbitral forum. Klay, 389 F.3d at 1200 (citing AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986)).

The second step in ruling on a motion to compel arbitration involves deciding whether "legal constraints external to the parties' agreement foreclosed

arbitration." Klay, 389 F.3d at 1200 (citing Mitsubishi Motors Corp., 473 U.S. at 628).

B. Analysis

1. Whether There Was a Valid Agreement to Arbitrate

The law of Georgia applies here. "The basic requirements for a binding contract under Georgia law are (1) a definite offer and (2) complete acceptance (3) for consideration." Caley v. Gulfstream Aerospace Corp., 333 F. Supp. 2d 1367, 1374 (N.D. Ga. 2004), aff'd, 428 F.3d 1359 (11th Cir. 2005) (citing Moreno v. Strickland, 567 S.E.2d 90, 92 (Ga. Ct. App. 2002)).

Where, as here, a party "is challenging the very existence of *any* agreement, *including the existence of an agreement to arbitrate* . . . there is no presumptively valid general contract which would trigger the district court's duty to compel arbitration pursuant to the [FAA]." Chastain v. Robinson-Humphrey Co., Inc., 957 F.2d 851, 854 (11th Cir. 1992) (emphasis in original). In such cases, to sufficiently place contract formation at issue, the challenging party has the burden to: (1) unequivocally deny that the agreement (containing the arbitration clause) was made; and (2) "substantiate the denial of the contract with enough evidence to make the denial colorable." Id. at 855.

10

The Magistrate Judge determined that Defendants presented evidence to establish that they sent a mass e-mail to EDMC employees advising them of the new ADR Policy and providing them a link to the policy for their review. The email provided a second link to a login screen where, after logging in, the recipient would view the ADR Policy Acceptance screen. The screen provided a box at the bottom for the recipient to click "Accept," and, upon clicking it, the screen would display a "Next" button, which, if clicked, would then display a confirmation screen. Defendants presented specific evidence showing that, on October 3, 2012, this email was sent to Albertson's work e-mail address. Defendants submitted evidence to show that Albertson acknowledged receipt of the ADR Policy and accepted it at 11:31 a.m. on October 3, 2012. The Magistrate Judge found that Albertson failed to present any evidence to establish a colorable denial of the existence of an agreement in this case. The Court finds no plain error in these findings and recommendation. See Slay, 714 F.2d at 1095.

The Magistrate Judge next found that the consideration element of a valid contract was met here. The Court agrees, because "Defendants' continued employment of [Albertson] (who was an at-will employee) constitutes bargained for performance in exchange for [Albertson's] assent." Shubert v. Scope Prods., Inc., No: 2:10-cv-101-RWS, 2011 WL 3204677, at *2 (N.D. Ga. July 27, 2011)

(citing <u>Hiers v. Choicepoint Servs. Inc.</u>, 660 S.E.2d 29, 31 (Ga. Ct. Ap. 2004)). The Court finds no plain error in the Magistrate Judge's finding that Albertson entered into a valid arbitration agreement. <u>See</u> <u>Slay</u>, 714 F.2d at 1095.

### 2. <u>Whether the Agreement is Unconscionable</u>

In Georgia, a contract can be challenged for procedural unconscionability, which addresses the process of making the contract, or substantive unconscionability, which looks to the contractual terms themselves. <u>See</u> <u>Caley</u>, 428 F.3d at 1377. Albertson argues that the agreement to arbitrate is unconscionable and is therefore not enforceable due to the "unequal bargaining power" between the parties since he "was required to give up the federal right to bring an employment discrimination jury trial[.]" ([8] at 7-9). The Magistrate Judge, noting that Albertson did not identify any Georgia or Eleventh Circuit cases finding an agreement to arbitrate unconscionable based on this theory, rejected Albertson's argument. The Magistrate Judge noted that courts have held unequal bargaining power in itself insufficient invalidate an arbitration agreement, and that the Supreme Court has upheld agreements to arbitrate between employers and employees. (R&R at 19-20). Accordingly, the Magistrate Judge concluded that Albertson's arguments that the arbitration agreement is unconscionable are without

12

merit. The Court finds no plain error in this finding and recommendation. See Slay, 714 F.2d at 1095.

### 3. Attorneys' Fees

Defendants seek, pursuant to 28 U.S.C. § 1927, an award of reasonable attorneys' fees and expenses incurred in bringing their Motion to Compel Arbitration. Section 1927 "provides that '[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'" Peterson v. BMI Refractories, 124 F.3d 1386, 1395 (11th Cir. 1997) (alterations in original) (quoting 28 U.S.C. § 1927)). Unreasonable and vexatious conduct warranting sanctions under Section 1927 "occurs 'only when the attorney's conduct is so egregious that it is tantamount to bad faith[.]'" Wandner v. Am. Airlines, No. 14-22011-CIV, 2015 WL 145019, at *12 (S.D. Fla. Jan. 12, 2015) (quoting Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1239-42 (11th Cir. 2007)).

The Magistrate Judge found that there is insufficient evidence to find that Albertson's counsel's refusal to withdraw the Complaint and submit to arbitration constituted such egregious misconduct as to amount to bad faith warranting sanctions under Section 1927. Accordingly, the Magistrate Judge recommends the

13

Court deny Defendants' request for attorneys' fees. The Court finds no plain error in the Magistrate Judge's findings and recommendation, and Defendants' request for attorneys' fees is denied. See Slay, 714 F.2d at 1095.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Russel G. Vineyard's Final Report and Recommendation [10] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Compel Arbitration [7] is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**SO ORDERED** this 14th day of April, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE